IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bilal A. Al-Haqq, # 126806, ) <br> a/k/a Bilal Abdullah Al-Haqq, ) <br> a/k/a Michael Dion McFadden, ) <br> ) <br>                         Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Byran P. Stirling, Director; ) <br> Warden John Pate; ) <br> A/W McKendly Newton; ) <br> A/W Randall Williams; ) <br> Major Walter Worrick; ) <br> Dr. Thomas E. Byrne; ) <br> HCA Pamela C. Derrick; ) <br> Capt. Ricky Grimes; ) <br> Lt. Richard Jenkins; ) <br> Cpl. Marvin Bryant; ) <br> Sgt. Floyd Hughes; ) <br> Sgt. Walker; ) <br> Mrs. C. Smith, Caseworker; ) <br> Ms. V. Jones, Inmate Rep; ) <br> Mr. Dukes, Food Serv. Dir.; ) <br> Ms. Verlynda Henderson, Mental Health; ) <br> Ms. Brantley, Fire Marshall; ) <br> Ms. Marilyn Smart, Grievance; ) <br> Ms. P. Smith, Grievance; ) <br> Mrs. Virginia Grubbs; ) <br> Ofc. John E. Crumley; ) <br> Sgt. Phadra Rivers-Smith; ) <br> John Tomarchio, Medical Director; ) <br> Janine Wrecsics, Nurse Management Serv.; ) <br> Maria Leggins, Mailroom Supv. Director; ) <br> Doris Poole, Supv. State Classification; ) <br> Mrs. C. Butler, Medical Records; ) <br> Ms. Brown, Mental Health; and ) <br> Oliver Washington, Sergeant Contraband, ) <br> Individual and Official Capacity, ) <br>                       Defendants. ) <br> _____) | C/A 2:14-cv-00098-JRA-WWD <br><br> **REPORT AND RECOMMENDATION** |

1

This civil rights action, brought pursuant to 42 U.S.C. § 1983,[1] filed by a state prisoner, Bilal A. Al-Haqq, #126806, (Al-Haqq), proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the Defendants' motions to dismiss the complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted, (Dkt. 31, 34, 39) and the Plaintiff's motion to amend his complaint (Dkt. 55).  28 U.S.C. § 636(b) and Local Civil Rule 73.02, DSC.

After the motions to dismiss were filed, Al-Haqq was provided Roseboro orders advising him of the importance of such motions and of the need for him to file an adequate response. (Dkt. 32, 37, 40).  On August 7, 2014, Al-Haqq moved for an extension of time to file a response to the Defendants' motions to dismiss.  That motion was granted and his time was extended to September 11, 2014. (Dkt. 45). Nonetheless, on August 25, 2014, Al-Haqq filed a motion denominated, "Plaintiff's Motion to Postpone" in which he requested "time to properly exhaust administrative remedies," which motion was denied on August 26, 2014. (Dkt.46).

On September 17, 2014, Al-Haqq filed his opposition to the motions to dismiss (Dkt. 51), to which the Defendants replied on September 25, 2014. (Dkt. 52).  Then, on

---

[1] Section 1983, titled a "Civil Action for Deprivation of Rights," reads in relevant portion:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. §1983.

October 2, 2014, Al-Haqq filed a motion he denominated "Plaintiff's Response to Defendants Reply" which appears to be a motion to file an amended complaint[2] to add several new medical claims. (Dkt. 54). No proposed amended complaint was filed by the Plaintiff.

Last of all, the Defendants opposed the Plaintiff's attempt to amend his complaint on October 20, 2014, on the grounds that such amendment to add claims would be futile and prejudicial to the Defendants. Hence, it appears consideration of the motions is appropriate.

The Defendants moved to dismiss the instant case because they argue that the Plaintiff has failed to exhaust his administrative remedies, that Defendants cannot be held liable for damages pursuant to 42 U.S.C.A. § 1983 in their official capacities, that the Plaintiff has failed to state a claim, that the Defendants are entitled to qualified immunity, and that the Plaintiff's injunctive relief request is moot.

The Plaintiff, Al-Haqq, filed this action on January 13, 2014[3] against twenty-eight

---

[2] In another case brought by the Plaintiff, Al-Haqq v. Byars, et al, C/A No 2:13-cv-02043-JFA, he attempted to litigate his complaint that his painful shoulder condition was not being properly treated by certain named medical Defendants at ACI, and that he was not permitted to keep his inhaler in his cell and had to get a correctional officer to get it from the Control Room and let him use it when he had three serious asthma attacks, which caused delay in mitigating his attacks. He indicated that he had written requests to Warden Pate and Dr. Bryne about both issues. SCDC Grievance Coordinator Ann Hallman's affidavit was filed in that case on July 22, 2014, in which she confirmed that Al-Haqq's Grievance ACI-0526-13 had been administratively exhausted on October 2, 2013, after Al-Haqq had filed his federal suit in July 2013. C/A No 2:13-cv-02043-JFA was dismissed without prejudice on September 3, 2014, for Al-Haqq's failure to properly exhaust his administrative remedies prior to bringing suit as required by the Prison Litigation and Reform Act. (Dkt. 113) .
    Al-Haqq seeks to amend his complaint, allegedly to add these now exhausted matters. He did not indicate if there would be new Defendants added.

[3] The Plaintiff filed the suit as a putative class action, but the Plaintiff's motion to certify the class was denied on March 13, 2013. (Dkt. 10).

(28) employees[4] of the Allendale Correctional Institution (ACI), a facility of the South Carolina Department of Corrections (SCDC), and the Director of the SCDC, Byran P. Stirling, all in their official and individual capacities.

Plaintiff raised a far ranging laundry list of complaints concerning the conditions of confinement in the Segregated Management Unit (SMU) at ACI, where he was housed at the times relevant to the complaint.[5] He maintains, in the most general terms, that "head corrections officials and prison supervisors" condone constitutional violations that effect the "inmates health, safety, and well being." He seeks damages and equitable relief.

The specific allegations in the Complaint against the Defendants are as follows:

<u>Double celling; improper cell mates; excessive force</u>: Mental health and non-mental health inmates are housed together (unless someone in on suicide watch) in small cells designed for one person. The cells have a small six (6) inch window which makes it difficult to view inside the cells and "nearly impossible" to summon for help. If an inmate kicks a door, they are maced. Plaintiff claims a number of the named Defendants direct and participate in the gassing, even though the inmates do not pose any threat or harm.

<u>Suicide cells; excessive gassing; improper temperatures; inadequate clothing</u>: Defendants Henderson and Brown are aware that lethal amounts of tear gas and other chemical munitions are used in suicide cells which are not padded. Plaintiff claims inmates are left naked for weeks, with no shoes, in freezing cells. Plaintiff claims the inmates will bang and scream for help.

<u>Deliberate indifference to safety; excessive disciplinary sentences; inadequate reviews and/or records</u>: Inmates must share cells with mentally ill inmates, or inmates who are violent and have a history of sexual assaults or sexual misconduct. Plaintiff alleges Defendant C. Smith fails to screen inmates before placing them in cells. Plaintiff also alleges that charges are "trumped up" in order to lengthen an inmate's time in SMU.

---

[4] All were served except C. Smith, Caseworker, C. Butler, Medical Records, and Sergeant Contraband. The motions to dismiss were brought on behalf of all the other named Defendants.

[5] The Plaintiff was transferred to Ridgeland Correctional Institution after the suit was filed.

Plaintiff states that inmates can serve sentences that are between 1 and 4 years in length and must serve 100% of that time without a psychological evaluation or a review, and inmates are not given proper credit for the time they serve. Plaintiff alleges Defendant Poole turns "a blind eye" when informed of a situation.

<u>Inadequate space; rape; retaliation</u>: The cells are so small that inmates are confined to their beds. Plaintiff alleges double-celling results in rapes and psychological stress. If an inmate refuses to double-up they are maced, punished with more time in the SMU, and lose their goodtime credits.

<u>Prolonged periods without exercise</u>: Inmates are confined to their cells 24 hours a day except for sick-call, showers, and haircuts. Plaintiff alleges no inmates in SMU receive outdoor exercise, and in some cases have been denied exercise for 2 years. Plaintiff lists the Defendants who he believes are charged with ensuring inmates receive outdoor exercise.

<u>Lack of in-cell activities/extreme temperatures</u>: Inmates are not allowed in-cell activities, and must endure temperature extremes in their cells.

<u>Lack of religious, educational, and treatment programs</u>: Inmates are not provided with religious, educational, or correspondence programs, and do not receive newspapers or books. There are no treatment programs for inmates unless an inmate is being treated for mental health.

<u>Improper ventilation</u>: The ventilation system is clogged and blows particles into the cells. Plaintiff also claims it shuts down for long periods of time. According to the Plaintiff there is exposed wiring in the ventilation system, and Defendant Brantley has refused to correct the problem. Doors and windows are sealed shut. There is no fresh air source and no way for air to circulate. Plaintiff alleges that chemical munitions travel through the vents which causes the inmates to experience respiratory problems (coughing and burning). Inmates are not removed from their cells after they have been maced.

<u>Exposed wiring; water leaks; unsanitary showers; fire hazards; raw sewage; dangerous water temperatures</u>: there is exposed wiring in the lighting outside the shower stalls, and the lights are hanging. Water leaks through the lights in the cellblock and puddles on the floor. Showers have excessive odor, heat, humidity, stagnant air, mold, fungus, cockroaches, and water bugs. There are no fire drills or evacuation plans. The plumbing overflows leaving feces and raw sewage floating across the floor. The hot water in the showers burns skin. There is no cold water and no way to adjust the temperature with the goal of keeping inmates out of the showers or forcing them to shower quickly. Plaintiff alleges the sewage, temperature, and ventilation problems make the living areas unfit for human habitation. He also raises other allegations including:

<u>Lethal doses of mace; lack of medical care after macing; retaliation for complaints; false drug tests; lack of due process</u>: the gas that is used in the cells to control the inmates is

sometimes as much as 200 grams and is also used on the mentally ill. Plaintiff states that the poor ventilation system makes it hard to breathe, and inmates are not removed from their cells to defumigate or wash. The Plaintiff claims a number of the named Defendants have either used the gas, condoned its use, or ignored its use.  If inmates complain about the use of gas they are transferred in retaliation for the complaints, and disciplinary charges are filed against them. Defendant Washington has falsified drug tests and has admitted he files untimely incident reports. Disciplinary proceedings sometimes do not utilize credible evidence, are biased, and violate the inmate's due process rights. The proceedings are also used to force inmate's to "tell" on other inmates.  Defendant SCDC  Director Stirling has been made aware of the problem but takes no action.

Kitchen/Food: Defendants Dukes and Williams are aware of the kitchen disrepair and the inadequate food service facility. The floor and drainage system in the kitchen are inadequate.  Exposed overhead sewage lines run the length of the food preparation and service area, and potable water pipes cross the waste disposal lines creating a danger of sewage contamination of the food and water.  Open sewage drains in the kitchen floor are unclean, and poor traps collect sewer gas.  Toilet areas are not properly separated from the food preparation area.  Utensils, food trays, and kitchen equipment are not properly cleaned. The kitchen area is infested with rodents, cockroaches, and other insects. "Fly sticks" with gross accumulations of dead flies hang in the kitchen. Ventilation is inadequate.  In order to increase ventilation, a back door is opened which allows insects, rats, and mice to enter the building.  Refrigerators and freezers are dirty. The walls are rough and porous and can not be easily cleaned.  Plaintiff claims Defendants Dukes and Williams are aware that mold grows on the walls and that the milk has bacteria growing inside it.  Food is not properly stored, food and non-food items are mixed together on shelves, frozen food is improperly thawed before cooking, and turkey is served which is clearly marked that it is not for human consumption. The turkey can not be cooked and is served raw, causing the inmates to have a stomach virus and extreme stomach pain. The meat cutting board is not clean, or cleanable.  Exposed garbage and standing water draw rodents and insects.

Medical facility/treatment: Defendants Byrne, Derrick, Butler, Tomarchio, and Wrecsics provide inmates with "grossly inadequate and incompetent medical treatment."  The prison medical staff does not render extensive and reasonable medical care for serious medical needs. There is no temporary infirmary and inmates are subject to the "unnecessary and wanton infliction of pain. Inmates with "serious painful medical injuries and illness cannot receive proper examination or treatment." Defendants Byrne, Derrick, Tomarchio, and Wrecsics know and recklessly disregard the "excessive risk of serious harm to prisoner[']s health or safety." There is inadequate competent staff to properly diagnose and treat prisoners, insufficient transportation arrangements, and lack of training. Plaintiff alleges the gross inadequacies of the system effectively deny access to adequate medical care.

Access to courts; mail: Defendants Grubbs, Leggins, Jones, Williams, Smith, and Smart

have denied inmates meaningful access to the law library. There is no staff with legal or paralegal training to supervise the libraries or assist with research. Plaintiff alleges there is a pattern and practice of denying inmates access to legal materials and the courts, and inmates have been harmed due to the current regulations and facilities. There is a denial of paper and legal supplies, and inmates are not permitted to use their personal funds to pay for postage in order to communicate with their families.  Legal mail is returned to inmates, sometimes when there is a deadline, and is being opened outside the presence of inmates and is passed on to others.

### Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted.  Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a "'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what... the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" Robinson v. American Honda Motor Co. Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555, 569).  Accordingly, a complaint does not require detailed facts; however, a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. See De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)).

In addition, pro se complaints are held to a less stringent standard than those drafted by attorneys. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Consequently, a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The requirement of a liberal construction does not mean, however, that the court can ignore a pro se Plaintiff's clear failure to allege facts that set forth a cognizable claim, or that a court must assume the existence of a genuine issue of material fact where none exists. See United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012). Moreover, a court may not construct the Plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), and a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), cert. denied, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986).

**Rule 15(a) Standard**

Federal Rules of Civil Procedure 15(a) provides that: "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Under the rule's liberal construction, see Ward Elecs. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir.1987), motions to amend should be granted absent extraordinary circumstances. Such circumstances include undue delay, bad faith or dilatory motive, a repeated failure to cure deficiencies, undue prejudice to

8

the opposing party, and futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).

## Discussion

A review of the record and relevant case law reveals that the Defendant's motion to dismiss should be granted and the Plaintiff's motion to amend the complaint to add claims, and possibly, Defendants, should be denied. Last of all, the unserved Defendants should be dismissed.

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust all of his administrative remedies before bringing suit under Section 1983 or any other Federal law. 42 U.S.C. §1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." See Booth v. Churner, 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). To satisfy this requirement, a Plaintiff must avail himself of every level of available administrative review. See generally Id.

The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

A Plaintiff's failure to exhaust administrative remedies is considered an affirmative

defense, and not a jurisdictional infirmity. Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).  Nevertheless, if the lack of exhaustion is apparent from the face of the prisoner's pleadings, as here, dismissal is appropriate. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.2008).

In response to the Defendants' Motion to Dismiss, the Plaintiff filed a "Motion to Postpone" the action in which he admitted that he failed to exhaust his administrative remedies with respect to his claims in the instant action. (Dkt. 44).  Accordingly, the Defendants' motion to dismiss should be granted for failure to comply with the exhaustion requirement of the PLRA..

Next, the Plaintiff's Section 1983 claims are asserted against the Defendants in their individual and official capacities.  A claim pursuant to Section 1983 does not, however, provide a federal forum for litigants seeking to recover against a State or State officials, in their official capacities, for alleged deprivation of civil liberties. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309 (1989). Moreover, neither a state nor an employee of a state, in the employee's official capacity, are considered "persons" under Section 1983. Id. at 71, 109 S.Ct. at 2312.  In addition, the Eleventh Amendment bars suits in Federal Courts against States as well as their officers and employees in their official capacities. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347 (1974).

The Defendants are employed by the SCDC, an agency of the State of South Carolina.  Accordingly, the Plaintiff may not maintain an action in federal court against

the Defendants in their official capacities, and the claims against them in that capacity cannot stand.

In addition, the Plaintiff's claims are premised in large part on supervisory liability on the part of the Defendants, and such claims are also subject to dismissal for that reason. See Polk Cnty. v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability.") (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); and Vinnedge v. Gibbs, 550 F.2d 926, 927–29 (4th Cir.1977). In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a Section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." See Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (rejecting an argument that government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct). Even if prior Fourth Circuit case law on supervisory liability is still good law after Iqbal, see Battle v. Ozmint, C.A. No. 2:12–1350–CMC–BHH, 2013 WL 4522517, at 9 (D.S.C. Aug. 27, 2013) (noting question as to whether supervisory liability can be imposed after Iqbal ), the Plaintiff has not satisfied the requirements for imposing supervisory liability enunciated in cases such as Carter v. Morris, 164 F.3d 215, 221 (4th Cir.1999) (a Plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); and Slakan v. Porter, 737 F.2d 368, 370–75 (4th Cir. 1984).

As a result, a Defendant in a supervisory position over others who has mere knowledge of a constitutional violation is subject to dismissal-the supervisor himself must purposefully violate a prisoner's constitutionally protected rights to be subject to liability. Therefore, to the extent Plaintiff alleges claims premised upon supervisory liability, those claims likewise fail.

Furthermore, Al-Haqq is not entitled to injunctive relief. Within his prayer for relief, he seeks a preliminary and permanent injunction against the Defendants relating to his incarceration at ACI; however, his request for injunctive relief has been rendered moot, as he is no longer housed at ACI. (See Notice of Address Change, Dkt. No. 20). He is now housed at Ridgeland Correctional Institution. See, e.g., Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248–49 (4th Cir. 2005).

In addition, Defendants C. Smith, Caseworker, C. Butler, Medical Records, and Sergeant Contraband have never been served the summons and complaint although Al-Haqq brought the action on January 12, 2014, well over the one hundred twenty (120) day limit after the complaint is filed. These named Defendants should be dismissed from the action.

Finally, Al-Haqq's a motion to amend the complaint to add two new claims, and perhaps new Defendants should be denied. (Dkt. 54) It appears that the Defendants are correct in their opposition to the motion and their contention that allowing the Plaintiff to amend his complaint at this point would be futile and prejudicial to the Defendants. Al-Haqq did not filed a copy of his proposed complaint as required, and that alone is sufficient to deny the motion. The court and the Defendants are left to guess exactly what the Plaintiff is proposing, but based upon the fact that the litigation has been

ongoing since January 2014, that there has been extensive motions practice, that the Defendants have already filed a well supported motion to dismiss upon multiple grounds, it certainly does appear that allowing amendment at this late date would be prejudicial and futile.

## Conclusion

Accordingly, for the aforementioned reasons, it is recommended that the Defendants' motions to dismiss (Dkt. 31, 34, 39) be granted, that the Plaintiff's motion to amend the complaint (Dkt. 54) be denied, and that the named but unserved Defendants C. Smith, Caseworker, C. Butler, Medical Records, and Sergeant Contraband, be dismissed, and this matter ended.

IT IS SO RECOMMENDED

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

October 27, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).